IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-01372-PAB-STV

RHAE SHAW, a Colorado resident,

    Plaintiff,

v.

SALESFORCE, INC., a foreign corporation,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on the Motion to Compel Arbitration [Docket No. 16] and Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Compel Arbitration [Docket No. 30]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff Rhae Shaw, a white woman, began her employment with defendant Salesforce, Inc. on or about September 16, 2019, as a Senior Director of Engineering. Docket No. 1 at 2, ¶ 5. On or about June 17, 2022, Ramesh Ragineni,[2] defendant's Executive Vice President of Engineering, became her direct manager. *Id.* As early as November 2021, plaintiff and her colleagues raised numerous complaints with

---

[1] "When reviewing a motion to compel arbitration, courts accept as true the operative complaint's factual allegations." *Munoz v. Conduent State & Loc. Sols., Inc.*, 2025 WL 799482, at *1 n.2 (10th Cir. Mar. 13, 2025) (unpublished) (citations omitted).

[2] Throughout her complaint, plaintiff refers to Mr. Ragineni as both Mr. Regineni and Mr. Ragineni. *See* Docket No 1 at 2, ¶¶ 5-6. Because most references are to Mr. "Ragineni," the Court presumes that Ragineni is the correct spelling of his surname.

defendant about Mr. Ragineni's discriminatory treatment of her and other female and non-Indian employees working under him.  *Id.*, ¶ 6.  Despite these complaints, defendant took no remedial action.  *Id.*  Plaintiff alleges that she had an exemplary performance record and was recommended for promotion.  *Id.* at 2-3, ¶ 7.  Despite this, Mr. Ragineni repeatedly declined to promote her, instead promoting numerous Indian males into Vice President of Engineering positions who allegedly had less experience, seniority, and proven success than plaintiff.  *Id.*

Defendant, acting through Mr. Ragineni, also purportedly excluded plaintiff from key communication channels shared among her Indian male colleagues, which hindered her ability to effectively perform her duties.  *Id.* at 3, ¶ 9.  Moreover, plaintiff avers that Mr. Ragineni bullied, denigrated, and marginalized her, which he did not do to Indian male employees.  *Id.*  In approximately September 2023, Mr. Ragineni informed plaintiff that he intended to reassign her to report to an Indian male vice president who he had hired one year earlier, even though that person had inferior qualifications, less seniority, and fewer accomplishments than plaintiff.  *Id.*, ¶ 10.  When plaintiff objected to this plan and raised complaints of discrimination, Mr. Ragineni retaliated against her by bullying plaintiff and systematically taking responsibilities from her.  *Id.*, ¶ 11.  From September 2023 through January 2024, plaintiff and other employees made repeated complaints about Mr. Ragineni, which were purportedly relayed to defendant's President and Chief Engineering Office.  *Id.* at 4, ¶¶ 12-13.  Despite these complaints, plaintiff avers that defendant took no steps to address or remedy Mr. Ragineni's conduct.  *Id.*, ¶¶ 12-14.  Mr. Ragineni told plaintiff that she had no future with the company.  *Id.*, ¶ 14.

Plaintiff asserts that, on February 26, 2024, she determined that she could no longer work under such conditions. *Id.*

As part of its hiring process, defendant presents its employees with a voluntary arbitration agreement.[3]  Docket No. 16-5 at 1, ¶ 5.  Plaintiff executed an arbitration agreement on September 4, 2019. *Id.* at 3, ¶ 7.  The arbitration agreement applies, without limitation, "to disputes regarding the employment relationship, . . . termination, discrimination or harassment and claims arising under the . . . Civil Rights Act of 1964." Docket No. 16-1 at 1.  It "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." *Id.*

On May 1, 2025, plaintiff brought suit against defendant, alleging claims for: (1) Race Discrimination and Retaliation in Violation of 42 U.S.C. § 1981; (2) Race and Sex Discrimination and Retaliation in Violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; (3) Race and Sex Discrimination and Retaliation in Violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-301 *et seq.*; and (4) Violation of the Equal Pay for Equal Work Act, Colo. Rev. Stat. §§ 8-5-101 *et seq.*  Docket No. 1 at 5-7, ¶¶ 16-41.

On June 27, 2025, defendant filed a motion to compel arbitration, seeking to compel arbitration of plaintiff's claims.  Docket No. 16.  The motion also seeks an award of attorney's fees pursuant to 28 U.S.C. § 1927, arguing that plaintiff's opposition to the

---

[3] The arbitration agreement states that it "is not a mandatory condition of your employment at the Company, and therefore you may submit a form stating that you wish to opt out and not be subject to this Agreement."  Docket No. 16-1 at 3.  Plaintiff initialed under the paragraph explaining her right to opt out, indicating that she understood this right. *Id.*  Defendant has no record of receiving an opt out form from plaintiff.  Docket No. 16-5 at 3, ¶ 16.

motion multiplied the proceedings unreasonably and vexatiously. *Id.* at 10-11. On July 17, 2025, plaintiff filed a response. Docket No. 22. On July 31, 2025, plaintiff filed a reply. Docket No. 24. On August 18, 2025, plaintiff filed a motion for leave to file a sur-reply. Docket No. 30.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "reflect[s] both a liberal . . . policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Accordingly, courts "must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (citation and quotation omitted). "In addition, this liberal policy covers more than simply the substantive scope of the arbitration clause, and encompasses an expectation that [arbitration] procedures will be binding." *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (citation and quotation omitted). It is "the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (internal quotation and citation omitted). A court discharges this duty by: "(1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." *Id.*

"[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate." *Harrison v. Envision Mgmt.*

4

*Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1097 (10th Cir. 2023). "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit." *Id.* (citation omitted). "Accordingly, the first task of a court asked to compel arbitration of a dispute is [typically] to determine whether the parties agreed to arbitrate that dispute." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Determining whether a dispute is subject to arbitration "is similar to summary judgment practice." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (quoting *Hancock v. Am. Tel. & Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). If the moving party satisfies this burden, "the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Id.* (citing *Hancock*, 701 F.3d at 1261). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made by the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KLM, 2019 WL 4463890, at *2 (D. Colo. Sept. 17, 2019) (citation omitted); *Bellman*, 563 F. App'x at 612 ("In ascertaining whether questions of material fact remain, we give the nonmoving party – here, Plaintiffs – the

5

benefit of all reasonable doubts and inferences that may arise." (citation and quotations omitted)).

A district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *BOSC*, 853 F.3d at 1177 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)). But if "material disputes of fact do exist," the FAA "calls for a summary trial." *Id*. (citing *Howard*, 748 F.3d at 978 (emphasis omitted)).

## III. ANALYSIS

### A. <u>Existence of Arbitration Agreement</u>

Defendant claims that plaintiff signed an arbitration agreement. Docket No. 16 at 2-3. Defendant submits, among other things, two declarations and a copy of the arbitration agreement. *See* Docket No. 16-1; Docket No. 16-5; Docket No. 16-6. These exhibits show that plaintiff signed the arbitration agreement via Docusign, a system which requires the signer to log in with a unique password and then sends the signed copy to the signer. Docket No. 16-1 at 4; Docket No. 16-5 at 3. Defendant asserts that the arbitration agreement is authentic. Docket No. 16 at 8. Defendant also notes that consideration is present because both parties agreed to arbitrate their disputes. *Id.* (citation omitted); *see also Kong Co., LLC v. Piccard Meds for Pets Corp*, No. 21-cv-02040-NRN, 2022 WL 1303067, at *4 (D. Colo. Apr. 29, 2022) ("[a] promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render the contract enforceable." (citation omitted)).

Defendant also argues that plaintiff's claims are covered by the arbitration agreement. Docket No. 16 at 9. Defendant quotes language that the agreement covers disputes regarding the employment relationship, discrimination or harassment, and

6

claims arising under Title VII. *Id.* (citing Docket No. 16-1 at 1). The Court finds that defendant has satisfied its initial burden of presenting evidence sufficient to demonstrate the existence of an arbitration agreement which covers plaintiff's claims and the opposing party's refusal to arbitrate. *See BOSC*, 853 F.3d at 1177.

Plaintiff makes no effort to raise a genuine dispute of material fact regarding the existence of an agreement or plaintiff's failure to comply therewith. *See generally* Docket No. 22. Instead, plaintiff argues that the arbitration agreement is unenforceable under the Ending Forced Arbitration Agreements Act ("EFAA"), 9 U.S.C. § 402. *Id.* at 5. The EFAA states that, "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). In its reply, defendant argues that the EFAA is inapplicable because plaintiff has made no allegations that she was subjected to any sexual behavior or sexual comments, and thus plaintiff does not allege conduct constituting a sexual harassment dispute. Docket No. 24 at 1-2.

### B. <u>Motion to File Sur-reply</u>

Plaintiff argues that she is entitled to file a sur-reply because defendant's reply includes numerous new arguments. Docket No. 30 at 1. The Court disagrees. A district court has discretion to permit a sur-reply if the reply raises new material, including new legal arguments or factual evidence. *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1008 (D. Colo. 2012) (citing *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005)). Defendant does not make new arguments in its reply; rather, it addresses the EFAA argument that plaintiff made in her response.

"Merely responding to arguments and pointing out defects in those arguments in a reply does not constitute new material." *Long v. Blue Shield of Calif.*, No. 24-cv-03352-PAB-CYC, 2025 WL 1397581, at *3 (D. Colo. May 14, 2025), *report and recommendation adopted*, 2025 WL 2093287 (D. Colo. May 30, 2025). Moreover, plaintiff addressed defendant's argument that her allegations do not constitute sexual harassment, correctly anticipating that defendant would make this point in its reply. Docket No. 22 at 7-8. Thus, defendant has not raised new arguments which justify the filing of a sur-reply.[4] Accordingly, the Court will deny the motion to file a sur-reply.[5]

### C. The EFAA

"In 2022, Congress amended the FAA by enacting the EFAA to 'render[ ] arbitration agreements invalid and unenforceable, at the election of the complainant, in sexual assault and sexual harassment cases.'" *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 530 (S.D.N.Y. 2024) (quoting *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 77 (2d Cir. 2025); (citing 9 U.S.C. § 402)). The EFAA describes a sexual harassment dispute as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Plaintiff brings sex-discrimination claims under Title VII and CADA. Docket No. 1 at 5-6, ¶¶ 22-33. Thus, in order for the EFAA to proscribe arbitration of plaintiff's case, plaintiff must

---

[4] Plaintiff argues that defendant also cites to new cases and describes a "misleadingly incomplete" account of the legislative history of the EFAA. Docket No. 30 at 2. Defendant's case citations and description of legislative history are in response to plaintiff's EFAA argument and, in any event, the Court does not analyze the legislative history of the EFAA in ruling on this motion.

[5] While the Court will deny the motion, it has nevertheless reviewed the proposed sur-reply, Docket No. 30-1. The sur-reply would not change the outcome of this order even if it was considered.

have alleged conduct which constitutes sexual harassment under Title VII or CADA.[6]

Plaintiff maintains that she makes allegations that fit within CADA's definition of

"harassment."  Docket No. 22 at 3-4.  Thus, the Court will analyze whether plaintiff has

alleged conduct that constitutes sexual harassment under CADA.[7]

Traditionally, "Colorado has adopted the same standards applicable to Title VII

cases when considering claims brought under [CADA]."  *Clayton v. Dreamstyle*

*Remodeling of Colo., LLC*, No. 20-cv-02096-KLM, 2022 WL 910957, at *18 (D. Colo.

Mar. 28, 2022) (quoting *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir.

2010)); *see also Trujillo v. Rio Grande Cnty. Sheriff's Off.*, No. 22-cv-01981-NYW-KAS,

2025 WL 2771530, at *10 (D. Colo. Sept. 29, 2025) (addressing Title VII and CADA

harassment claims together).  However, in 2023, the Protecting Opportunities and

Workers' Rights Act ("POWR"), S.B. 23-172, amended CADA.  As amended, CADA

describes "harassment" as follows:

> "[H]arass" or "harassment" means to engage in, or the act of engaging in,
> any unwelcome physical or verbal conduct or any written, pictorial, or
> visual communication directed at an individual or group of individuals
> because of that individual's group's membership in, or perceived
> membership in, a protected class, as described in subsection (1)(a) of this
> section, which conduct or communication is subjectively offensive to the
> individual alleging harassment and is objectively offensive to a reasonable
> individual who is a member of the same protected class.  The conduct or

---

[6] When a case has even one sexual harassment claim, the EFAA invalidates any arbitration agreement as to the entire case.  *See* 9 U.S.C. § 402(a) ("no predispute arbitration agreement . . . shall be valid or enforceable with respect to a *case* which is filed under Federal, Tribal, or State law") (emphasis added); *see also Bruce v. Adams and Reese, LLP*, 168 F.4th 367, 382 (6th Cir. 2026) ("the EFAA's text renders an arbitration agreement unenforceable with respect to a plaintiff's entire case or action, and not only with respect to certain claims therein.") (internal quotations, alterations, and citation omitted).

[7] Plaintiff does not claim that her Title VII claims fall within the scope of the EFAA.

communication need not be severe or pervasive to constitute a
discriminatory or an unfair employment practice . . . if:

(I)  Submission to the conduct or communication is explicitly or
implicitly made a term or condition of the individual's employment;

(II)  Submission to, objection to, or rejection of the conduct or
communication is used as a basis for employment decisions
affecting the individual; or

(III)  The conduct or communication has the purpose or effect of
unreasonably interfering with the individual's work performance or
creating an intimidating, hostile, or offensive working environment.

Colo. Rev. Stat. § 24-34-402(1.3)(a)(I)-(III).

Plaintiff presumes that this definition of harassment includes "sexual
harassment." Docket No. 22 at 5-7. Plaintiff argues, under CADA's definition of
harassment, a "hostile work environment" claim is synonymous with a "sexual
harassment" claim.[8] *Id.* at 6. Relying on cases which define a "hostile work
environment" claim, plaintiff asserts that a sexual harassment claim under CADA only
requires allegations that a plaintiff was harassed on the basis of sex. *Id.* at 5-6.
Defendant, on the other hand, argues that sexual harassment is defined as harassment
that "includes conduct of a sexual nature." Docket No. 24 at 4.

However, it is unnecessary for the Court to determine which definition of sexual
harassment under CADA is correct because plaintiff has failed to plead conduct that
constitutes sexual harassment under either definition.

---

[8] In making this assertion, plaintiff does not cite cases which analyze the
meaning of sexual harassment under CADA; rather, plaintiff's cases analyze the
meaning of sexual harassment under Title VII and under a New York state law. *See*
Docket No. 22 at 5-7.

### D. **Plaintiff's Allegations**

Courts are split on whether the EFAA requires a plaintiff to plead a claim for sexual harassment according to a plausibility standard consistent with Rule 12(b)(6) or whether a plaintiff's factual allegations, combined with a claim that asserts facts consistent with sexual harassment, are sufficient. *See Diaz-Roa*, 757 F. Supp. 3d at 533-34 (describing the split). However, courts that do not require a sexual harassment claim to pass the Rule 12(b)(6) threshold still require that the plaintiff allege facts constituting sexual harassment. *Id.*; *see also* 9 U.S.C. § 401(4). For example, in *Diaz-Roa*, 757 F. Supp. 3d at 533-34, the court did not apply the plausibility standard of Rule 12(b)(6) to the plaintiff's sexual harassment allegations. Rather, the court held that "plaintiff need only plead nonfrivolous claims relating to . . . conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication." *Id.* at 533. However, the court still required "that the conduct must be actually alleged and with sufficient specificity that the court is able to determine the law that is applicable and that there is a real and nonfrivolous reason to believe that the conduct violates that law against sexual harassment." *Id.* at 542.

In this case, plaintiff alleges that she was subjected to a "hostile work environment," but she does not plead any conduct which shows that this hostile work environment was due to her sex. *See* Docket No. 1 at 5-6, ¶¶ 24, 30. Plaintiff alleges that she was "frequently bullied, denigrated, and generally marginalized," but she does not allege that this bullying or denigration was on the basis of her being a woman. *Id.* at 3, ¶ 9. Plaintiff also alleges that she reported Mr. Ragineni for discrimination, *id.* at 4, ¶ 13, but does not state whether Mr. Ragineni discriminated against her based on her sex. Plaintiff's allegation that Mr. Ragineni promoted Indian men over her is a claim of

11

disparate treatment, not of harassment, and it is not alleged that this disparate treatment was because of her sex. *See id.* at 2-3, ¶ 7. Thus, even under the more relaxed standard of *Diaz-Roa*, plaintiff does not allege conduct which constitutes sexual harassment—even if sexual harassment is defined as harassment on the basis of sex. Moreover, none of plaintiff's claims are labeled as sexual harassment claims. *See* Docket No. 1 at 5-7, ¶¶ 16-41. Instead, both the Title VII and CADA claims are titled "Race and Sex Discrimination and Retaliation."[9] *Id.* at 5-6. The Court finds that plaintiff voluntarily signed the arbitration agreement. *See* Docket No. 16-1 at 4. The Court also finds that the dispute is within the scope of the arbitration agreement, which covers, among other things, "disputes regarding the employment relationship, . . . termination, discrimination or harassment, and claims arising under the . . . Civil Rights Act of 1964, . . . and all other state statutory and common law claims." *Id.* at 1. Accordingly, the EFAA does not invalidate the parties' arbitration agreement. Thus, plaintiff must arbitrate her claims.

### E. Leave to Amend

Plaintiff requests leave to amend in the event the Court finds her allegations insufficient. Docket No. 22 at 6 n.1. Pursuant to the Local Rules, a "motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). The Local Rules also require a party

---

[9] Seemingly recognizing the complaint's deficiencies, plaintiff explains that "[h]er counsel had considered amending the complaint . . . but decided against that course because it was likely to create unnecessary motions practice." Docket No. 22 at 6 n.1. Plaintiff also states that defendant has not "moved under Rule 12 for a more definite statement regarding her allegations of harassment." *Id.* at 5. Plaintiff does not explain why defendant has the onus to prompt plaintiff to properly allege harassing conduct. The Court finds that responsibility lies with plaintiff.

seeking to file an amended pleading to attach the proposed amended pleading. D.C.COLO.LCivR 15.1(b).  Plaintiff did not do so.  The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion."  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated 'improvements' to the complaint."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." (quotations omitted); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming prejudicial dismissal and denial of request to amend made in response to motion to dismiss without formal motion); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave.").  Accordingly, the Court will not grant leave to amend.

### F.  Attorney's Fees

Defendant requests that the Court award it attorney's fees under 28 U.S.C. § 1927, arguing that plaintiff multiplied the proceedings "unreasonably and vexatiously" by challenging the arbitration agreement without a valid basis.[10]  Docket No. 16 at 10.

---

[10] In its reply, defendant seems to abandon this rationale and instead argues that it is entitled to attorney's fees because plaintiff failed to confer in good faith about the basis for opposing the motion to compel arbitration.  Docket No. 24 at 8-10.

This request fails to comply with the Local Rules of the District of Colorado.  A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3.  *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . .  The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").  Moreover, the Court finds that the original basis for defendant's request—that plaintiff had no reasonable basis to oppose the motion—is not true.  Plaintiff's arguments about the EFAA are an appropriate basis to oppose the motion to compel arbitration.  The Court will not consider new arguments raised in a reply brief.  Thus, the Court will not grant defendant's request for attorney's fees.

## G.  Administrative Closure

Pursuant to D.C.COLO.LCivR 41.2, "[a] district judge . . . may order the clerk to close a civil action administratively subject to reopening for good cause."  Administrative closure is "the practical equivalent of a stay."  *sPower Dev. Co., LLC v. Colo. Pub. Utilities Comm'n*, No. 17-cv-00683-CMA-NYW, 2018 WL 5996962, at *4 (D. Colo. Nov. 15, 2018) (quoting *Quinn v. CGR*, 828 F.2d 1463, 1465 n.2 (10th Cir. 1987)).  It is standard practice in this district for courts to administratively close cases pending resolution of the parties' claims in arbitration.  *See, e.g.*, *Cochlear Ltd. v. Oticon Med. AB*, No. 16-cv-01700-PAB-KMT, 2017 WL 4251927, at *4 (D. Colo. Sept. 25, 2017) (denying motion to stay but administratively closing case pending resolution of claims through arbitration).

Because this case will be inactive for an unknown period of time pending the conclusion of arbitration, the Court finds good cause to administratively close this case

14

pursuant to D.C.COLO.LCivR 41.2, subject to being reopened for good cause shown. Either party may move to reopen the case at the end of the arbitration process or for other good cause.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Compel Arbitration [Docket No. 16] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Compel Arbitration [Docket No. 30] is **DENIED**.  It is further

**ORDERED** that plaintiff and defendant shall proceed to arbitrate their dispute according to the provisions of the arbitration agreement between them in accordance with this order.  It is further

**ORDERED** that this case shall be administratively closed, subject to reopening by any party upon a showing of good cause, pursuant to D.C.COLO.LCivR 41.2.  It is further

**ORDERED** that, not later than twenty days after the completion of the arbitration proceedings, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the case may be dismissed.

DATED March 20, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

15